JUDGE HOLWELL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

FIVE STARS GLOBAL SHIPPING (B.V.I.) CO. LTD.

Plaintiff,

- against -

FORMULA SHIPPING CO. LTD., and
EVER SHINE LTD.

Defendants.
-------------------------------------------------------------------X

: 07 Civ. _____
:
:
:  ECF CASE
:
:
:
:
:

07 CV 11454



### VERIFIED COMPLAINT

Plaintiff, FIVE STARS GLOBAL SHIPPING (B.V.I.) CO. LTD., ("Plaintiff"), by and

through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against

the Defendants, FORMULA SHIPPING CO. LTD., (hereinafter referred to as "Formula") and

EVER SHINE LTD. (hereinafter referred to as "Ever Shine") alleges, upon information and

belief, as follows:

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333.  Jurisdiction over this

matter is also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*,

and this Court's federal question jurisdiction, 28 United States Code § 1331.

2.     At all times material to this action, Plaintiff was, and still is, a foreign corporation,

or other business entity organized and existing under foreign law with an address in The Peoples

Republic of China.

3.     Upon information and belief, Defendant Formula was, and still is, a foreign

corporation, or other business entity organized and existing under foreign law with an address in

Hong Kong.

JUDGE HOLWELL
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

FIVE STARS GLOBAL SHIPPING (B.V.I.) CO. LTD.



CV 11454

               Plaintiff,          :    07 Civ. _____

- against -             :    ECF CASE

FORMULA SHIPPING CO. LTD., and   :
EVER SHINE LTD.               :

            Defendants.     :
------------------------------------------------------------X

## VERIFIED COMPLAINT

Plaintiff, FIVE STARS GLOBAL SHIPPING (B.V.I.) CO. LTD., ("Plaintiff"), by and

through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against

the Defendants, FORMULA SHIPPING CO. LTD., (hereinafter referred to as "Formula") and

EVER SHINE LTD. (hereinafter referred to as "Ever Shine") alleges, upon information and

belief, as follows:

1.     This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure and 28 United States Code § 1333. Jurisdiction over this

matter is also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*,

and this Court's federal question jurisdiction, 28 United States Code § 1331.

2.     At all times material to this action, Plaintiff was, and still is, a foreign corporation,

or other business entity organized and existing under foreign law with an address in The Peoples

Republic of China.

3.     Upon information and belief, Defendant Formula was, and still is, a foreign

corporation, or other business entity organized and existing under foreign law with an address in

Hong Kong.

4.      Upon information and belief, Defendant Ever Shine Ltd. was, and still is, a foreign corporation, or other business entity organized and existing under foreign law with an address in Hong Kong.

5.      At all material times, Plaintiff was the owner of the motor vessel "FIVE STARS GLOBAL" (hereinafter the "Vessel").

6.      Plaintiff chartered the Vessel to Formula pursuant to a fixture recap dated 9th October 2007 that employed a pro forma charter party dated 30th June 2006. Pursuant to the charter party agreement Formula was required to pay hire to Plaintiff at a rate of $35,000.00 per day fifteen days in advance. *See copy of Recap and Pro Forma Charter Party attached as Exhibit 1.*

7.      A dispute has arisen between Plaintiff and Formula. Specifically, Formula has breached the charter party contract because it has failed to remit hire to Plaintiff in the amount of $573,421.16 despite that Plaintiff has demanded payment of this past due amount. *See copy of Statement of Account dated 3rd December 2007 attached as Exhibit 2.* Formula has failed to pay hire in full and on time without legitimate excuse and is in breach of charter party clauses 4, 5 and 29. Plaintiff has fulfilled its obligations under the contract.

8.      Pursuant to the charter party Clause 17, all disputes are to be submitted to arbitration in London with English Law to apply.

9.      Plaintiff is preparing to initiate arbitration proceedings in London on its claims.

10.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. As best as can now be estimated, Plaintiff expects to recover the following amounts under the final arbitration award:

A.      Principal claim:                                          $573,421.16

2

| B. | Estimated interest on claim: | $122,014.14 |
| | 3 years at 6.5% compounded quarterly | |
| C. | Estimated attorneys' fees and expenses: | $150,000.00 |
| D. | Estimated costs of arbitration: | $40,000.00 |
| Total | | $885,435.30 |

11.    Defendant Ever Shine is a receiving/paying agent of Formula such that Ever Shine is now, or will soon be, holding assets belonging to Formula, or vice versa. In the course of the charter party between Plaintiff and Formula, Ever Shine made a hire payment to Plaintiff in the amount of $369,150.00 notwithstanding that Ever Shine had no connection with the charter party contract. *See copy of Ever Shine's Payment Remittance to Plaintiff attached as Exhibit 3.*

12.    In the further alternative, Defendants are affiliated companies such that Ever Shine is now, or will soon be, holding assets belonging to Formula, or vice versa.

13.    The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendants have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendants.

14.    The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendants held by

the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendants, and to secure the Plaintiff's claims as described above.

**WHEREFORE**, Plaintiff prays:

A.      That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.      That the Court retain jurisdiction to compel the Defendants to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

C.      That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee within the District which are due and owing to the Defendants, in the amount of $885,435.30 calculated to date to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

D.      That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court

E.      That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

F.      That this Court award Plaintiff its attorney's fees and costs of this action; and

G.    That the Plaintiff have such other, further and different relief as the Court

may deem just and proper.

Dated: December 20, 2007
New York, NY

The Plaintiff,
FIVE STARS GLOBAL SHIPPING (B.V.I.) CO. LTD.,

By:

Patrick F. Lennon
Charles E. Murphy
LENNON, MURPHY & LENNON, LLC
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 – phone
(212) 490-6070 – fax
cem@lenmur.com

## ATTORNEY'S VERIFICATION

State of New York )
                  )    ss.:    New York City
County of New York )

1.    My name is Charles E. Murphy.

2.    I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3.    I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the

Plaintiff.

4.    I have read the foregoing Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information

and belief.

5.    The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

6.    The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents

and/or representatives of the Plaintiff.

7.    I am authorized to make this Verification on behalf of the Plaintiff.

Dated:    December 20, 2007
          New York, NY

Charles E. Murphy

6

EXHIBIT 1

259986

Formail

------------ 2007-10-09 18:53:45 ----------

as zhang / shen

cc: operation teams / mr yuan

re: mv fs global / formula shipg

dd dys!

pls find the recap sch send to u just b4, and using y return to apts kindly.

x pls pls adv us the chinese tonnage docs expiry date and who is the last sheper so we may directly contact w. them fr share the chinese tonnage docs.

ly, my operation teams wl flow this vsl if clean fixed and contact points usf:

mr yuan
cel: 13816119832 (24hours on duty)
mail: xxxxxx@xmail.xxx.cn

tks

waitg yrs.

hrgds

david shen
tel: 0086-25-68821351 (dir)
fax: 0086-25-68826876
mob: 0086-13816119838 / 13805175717
mail: shenxlxxfxxx@xmail.com.cn

------ Original Message ------
From: david shen
To: FS08020163.COM
Cc: captwang2006@ip.sina.com
Sent: Tuesday, October 09, 2007 6:47 PM
Subject: Re: Re: ro: mv. fs global / formula shipg

ms zhang / shen

2007-10-15                                                                    16:16

POSSELL

pls find below all terms/conditions in recap wch is mutually agreed by owners /
owtrs csf:

ie:

~PERSOWNA VSL:
NAME OF SHIP                                MV 'FIVE STARS GLOBAL'

~OWNRS:                                     FIVE STARS GLOBAL (GROUP)
SHIPPING LTD

~PORT OF REGISTER :                         PANAMA FLAG

~CLASS :                                    BKS

~IMO NO                                     7404607

~CALL SIGN                                  3FZKG

~GRST                                       358324000

~INMARSAT-C NO:                             435322419/20

~GRT/NRT:                                   22,795/14,811 MT

~DWT                                        (S) 4075MT  (W) 38430MT  (T) 41470MT

~DRAFT:                                     19/11M

~LENGTH OVERALL :                           182.875M

~BREADTH :                                  27.60M

~DEPTH (MOLD)                               17.00M

~BUILT AT:                                  MIZUSHIMA, JAPAN

~DELIVERED :                                1977

~F.WATER CAPA:                              241.4MT

~FUEL OIL TOTAL:                            2322.9 CBM/2141.70MT

~CARGO GEAR :                               5X25METRIC   ( PROVTG 1DT )

BALAST/LADEN DAILY CONSUMPTION             25/27  186 CST

BALAST/LADEN DAILY CONSUMPTION             2.6/2.5  MDO ( HAVE CRANE =0.6)

FORMALL

CONSUMPTION IN PORT ABT                          2.5MT MGO + ABT 1MT IFO MAX 1.5PCST

CONSUMPTION FOR IN/OUT EACH PORT PLUS            3T MGO

SPEED                                            ABT 12.5KN

Y. F. C.                                         44 MT AT SUMMER DRAFT

-HATCH COVER :     NO. 1 SINGLE PULL TYPE  NO. 2-5 SINGLE SKIDPONTOON TYP

-HOLD VENTILATION :     NATURAL VENTILATION WITH MESHROOM TYPE

-GRAIN/BALE CAPACITY:   47.711.16 CBM/46.319.30 CBM

-HATCH SIZE ESP:

|       | G/B                | L     | B     |
|-------|--------------------|-------|-------|
| NO. 1 | 6976.90/6642.60    | 12.6  | 11.9  |
| NO. 2 | 10268.60/9780.40   | 21.1  | 11.9  |
| NO. 3 | 10298.80/9747.70   | 21.5  | 11.9  |
| NO. 4 | 10298.88/9747.70   | 21.6  | 11.0  |
| NO. 5 | 9867.60/9430.90    | 21.6  | 11.0  |

- ALL DETS ABT WOG

-ACCT: FORMALA SHIPPING CO. , LTD.  THEIR PERFORMANCE TO C'TEE BY THE M/S:  WEIFESTAR

CO., LTD

-OWNERS:     FIVE STARS GLOBAL(GROUP) SHIPPING LTD

-SUB STEM/SHPRS/RECVRS APPRVL BEFORE 1200 bwijing time /19th/oct/2007

- 1 TCT ONE LADEN ABT  50 DAYS FM CHINA  TO PERISAN GULF(INTENTION bewuar gobuy + ghdal, anmealy port )

2007-10-10                                                                    14+16

Fednmail

*/ STEEL PRODUCTS, GENERAL CODES ALWAYS  HARD RES/LAMPEL, BUT EXCLUDE IRAQ & KUWAIT

- MAX WEIGHT PER UNIT/PIECES OF THE STEEL CGO NOT EXCEED 6 MT.

-DELY DOP 1SP POHANG S, KOREA  ATONSHINC

-LYCN 9TH-13TH/OCT/2007

-REDLY DOP 1SP PKG RANGE PICO ATONSHINC

CHTRS TO  DECLARE  DISCHARGE  PORT  LATEST  ON  VSL  PASSING  SINGAPORE.

- Hire : USD35,000 PDPR DIOT EVERY 15DAYS IN ADV

USD28,500 PDPR DIOT USS REDEL TWO  OR IN CHTRS OPTION USD35,000 PDPR DIOT

PLUS ILS. 10,000 AS BALLAST BONUS LSS REDEL 1SP BANGUR CHBAY, CHAS/RCH SHALL
DECLARE THE OPTION ON 2 DAYS PRIOR

COMPLETION OF DISCHARGING

CHTRS TO PAY 1ST 15DAYS HIRE AND VALUE OF BOD BUNKERS TO BE PAID  W/I 3 BANK
DAY  AFT VSLS DELY N

RECEIVING INVOICE BY FAX,  CHTRS IN AV THE RIGHT TO DEDUCT ESTI BOR VALUE IN
LAST SUFFICIENT HIRE

PAYMENTS

OWNERS TO APPOINT THEIR  OWNERS AGENT FOR OWNERS MATTER AT BOTH
LOADING

AND DISCHARGING PORTS, CHTRS  NOT TO DEDUCT ESTIMATED O/C FROM
HIRE:

EXCEPT  AGAINST FAX COPY OF VOUCHERS. IF ANY.

--ITEMC :USD3503  LUMPSUM INCL REMOVAL/DISPOSAL ALL DUNNAGE/ LASHING
MATERIALS/DEBRIS/ETC...

C/V/E : CHRS TO PAY USD 1,200 PER MONTH OR PRORATA FOR COVERING ALL CABLE,

COMMUNICATIONS, VICTUALLING, REPRESENTATION AND ENTERTAINMENT

- BUNKER CLS :
HBO ABT 570 MTS IFO AND ABT 180 MTS MGO.
BOR ABT SAME AS ON DELY.
PRICES BEING USD 400/330PMON IFO-MGO RESPCTVLY.

- NO OVERAGE USGES ALLOW.

- CHRS TO SETTLE DIRECTLY WITH THE LAST CHRS ABT CHINESE TONNAGE DUE CERT

-others as per p/f c/p ex. five stars global dated 30th/June/2006

- addcomm 3.5pct ttl

ENDS

david shen
tel: 0086-25-83831561 (dir)
fax: 0086-25-58820826
mob: 0086-15515115886 / 13505175717
mail: shenxiaofeng@jcmail.com.cn

=====================

数

2007-10-26                                                         14:26

# Time Charter

GOVERNMENT FORM

*Approved by the New York Produce Exchange*

November 6th, 1913-Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

This **Charter Party** made and concluded in............*Singapore*..........**30***th*.........day of .................**June**.......**19**.**2006**..............................

2Between......**Hougkong Hongsheng Shipping Co. Ltd** ..............................................................................................

3   Owners of the good.... *panama flag*................................{~~Steamshia~~ (Motorship)}.........*"Five Stars Global"* ...........of......*(See Clause 31)*............

4   of........... *23,705*............tons gross register, and....... *14,611*................tons net register, ~~having-engines-of~~.................................~~indicated-horse~~ ~~power~~

5   and with hull, machinery and equipment in a thoroughly efficient state, and classed.............. ...................................................... .............................

6   at.........of about............*47,711.10/45,319.30*..........cubic metre *grain*/bale capacity, and about...........*40,754 metric*................tons of 2240 lbs.

7   deadweight capacity (~~cargo-and-bunkers, including fresh-water and-stores not exceeding-one and one-half~~ percent-of-ship's-deadweight-capacity;

8   ~~allowing-a-minimum-of-fifty-tons~~) on a draft of...*12.112*.....~~feet~~. *meters*...inches-on....*salt water*,..Summer free board, inclusive of permanent bunkers

9   which are of the capacity of about................................................................tons of fuel, and capable of steaming, fully laden, under good weather

10   conditions about.......*12*... knots on a consumption of about..... *27 metric*......tons of *IFO(180 CST) + about 2.5 metric ton of MGO* best Welsh ~~coal-best-grade-fuel-oil-best-grade-Diesel-oil,~~

11   now....*trading*......................................................................................................................................................

12   ........................and.................**Nanjing Ocean Shipping Co., Ltd**...................Charterers of the City of...............*Nanjing*.........

13          **Witnesseth**, That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for about... one time charter via sb(s) sp(s) sa(s) aaa awiwl, duration about 35days wog

15   ...................................within below mentioned trading limits.

16   Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for

17   the fulfillment of this Charter Party. *Acceptance of delivery of the vessel shall not constitute any waiver of Owners' obligation.*

18   vessel to be placed at the disposal of the charterers, at **delivery outward pilot pohang atdnshine**

19   ......................................................................................................................................... ........ .... ....... .........................

20   ~~in-such-dock or at-such wharf or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No.6 )~~ as

21   ~~the Charterers-may-direct. If such dock, wharf or place be not available-time to count as provided for in clause No.5~~ Vessel on *arrival loading port* ~~her delivery~~-to be

22   ready to receive *any permissible* cargo with clean-swept holds and *throughout the period of this charter unless caused by Charterers or their agents fault* tight, staunch, strong and in every way fitted for the service, having water ballast, winches and

23   donkey boiler with sufficient steam power, or if not equipped with donkey boiler, then other power sufficient to run all the *cranes* ~~winches~~ at one and the same

24   time (and with full complement of officers, seamen, engineers ~~and firemen~~ for a vessel of her tonnage), to be employed, in carrying lawful , merch-

25   andise ~~including petroleum or its products, in proper containers~~, excluding......*See Clause 41*...........................................................................

26   ~~(vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk~~

27   ~~all necessary fittings and other requirements to be for account of Charterers), in such lawful trades, between safe port and/or ports~~ in British North

I

28  ~~America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of—Mexico, and/or~~

29  ~~Mexico, and/or South America~~ ............................................................................................................................... and/or Europe

30  ~~and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding—Magdalena River, River St. Lawrence between~~

31  ~~October 31ˢᵗ and May 15th, Hudson Bay and all unsafe ports, also excluding, when out of season, White Sea, Black Sea and the Baltic;~~

32  ............................................................................................................................................................

33  ............................................................................................................................................................

34  ............................................................................................................................................................

35  as the Charterers or their Agents shall direct, on the following conditions :

36      1. That *whilst on hire* the Owners shall provide and pay for all provisions, *fresh water*, wages *including all Officer's/crew's overtime* and

consular shipping and discharging fees of the Crew shall pay for the

37  insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including *drinking water, lubricating oil and garbage*

*due, if not compulsory* boiler water and maintain her class and keep

38  the vessel in a thoroughly efficient state in hull, machinery and equipment *with inspection certificates necessary to comply with all current*

*requirement at all ports of call and canal* for and during the service.

39      2. That the Charterers shall provide and pay for all the fuel except *lubricating oil* as otherwise agreed, Port Charges, *compusory* Pilotages,

Agencies, Commissions,

40  Consular Charges (except those pertaining to the Crew), and all other usual expenses except those before stated,   but when the vessel puts into

41  a port for causes for which vessel is/*Owners are* responsible,   then all such charges incurred shall be paid by the Owners.   Fumigations ordered

because of

42  illness of the crew to be for Owners account.   Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this

43  charter to be for Charterers account. All other ~~fumigations to be for Charterers account after vessel has been on charter for a continuous period~~

44  ~~of six months or more.~~

45      Charterers are  to provide necessary dunnage and shifting boards, also any extra fittings  requisite for a special trade or unusual cargo,  but

46  Owners to allow them the use of any dunnage and shifting boards already aboard vessel Charterers to have the privilege of using shifting boards

47  for dunnage, they making good any damage thereto.

48      3. ~~That the Charterers, at the port of delivery,  and the Owners, at the port of re—delivery,  shall take over and pay for all fuel remaining on~~

49  ~~board the vessel at the current prices in the respective ports, the vessel to be delivered with not less than~~...............................tons and not more than

50  ...............tons and to be re-delivered with not less than...........................tons and not more than...........................tons—  *See Clause 36*

51      4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of *USD 12,750  daily including overtime payable*

52  *15 days in advance*....................................~~United States Currency per ton on vessel's total deadweight carrying capacity, including bunkers and~~

53  ~~stores, on~~....................~~summer freeboard, per Calendar Month~~, commencing on and from the day/*time of her delivery, as aforesaid, and at

54  and after the same rate for any part of a *day* month; hire to continue until the hour of the day of her re-delivery in like good order and condition,

ordinary

wear and tear excepted, to the Owners (unless lost) at..........*on dropping outward pilot one safe port West Coast India range, port in Charterers'*

*option, any time day or night, Sundays and Holiday included*..................unless otherwise mutually agreed. Charterers are to give Owners not less

than.................. *20/15/7/5* ..................days *approximate*

57  notice of vessels expected date of redelivery, and probable port *and 3/2/1 day(s) definite notice. Charterers to keep Owners advised of vessel's*

*movements and notify Owners immediately for unforeseen delay.*

58      5. Payment of said hire to be made in New York in cash in United States Currency, *every 15 days* ~~semi-monthly~~ in advance, *to Owner's*

*bank account as per Clause 29* and for the last *15 days* ~~half month~~ or

59  part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid *but always subject to the wording of*

2

*Clause 29* ~~for the balance day by day, as it becomes~~

60 ~~due, if so required by Owners, unless bank guarantee or deposit in made by the Charterers,~~ otherwise failing the punctual and regular payment of the

61 hire, or bank guarantee, or on any breach of this Charter Party,   the Owners shall be at liberty   to withdraw the vessel from the service of the

62 Charterers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. ~~Time to count from 7 a.m. on the working day~~

63 ~~following that on which written notice of readiness has been given to Charterers or their Agents before 1 p.m., but if required by Charterers,~~ they

64 ~~to have the privilege of using vessel at once,~~ such time used to count as hire.

65      Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers or their Agents, subject

66 to 2 1/2% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application

67 of such advances.

68      6.   That the cargo or cargoes be laden and/or discharged in any *safe* dock or at any *safe* wharf or *safe* place that Charterers or their Agents may

69 direct, provided the vessel can safely lie always afloat at any time of tide, ~~except at such places where  it is customary for similar size vessels to~~

70 ~~lie aground.~~

71      7.   That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than   she can reasonably stow and carry ), also

72 accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and   sufficient space for Ship's officers, crew,

73 tackle, apparel, furniture, provisions, stores and fuel. ~~Charterers have the privilege of passengers as far as accommodations allow;   Charterers~~

74 ~~paying Owners ........ ...per day per passenger for accommodations and meals.   However,   it is agreed that  in case any fines or extra expenses are~~

75 ~~incurred in the consequence of the carriage of passengers, Charterers are to bear such risk and expense.~~ *No passengers are allowed*

76      8.   That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and

77 boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and

78 agency; and Charterers are to load, stow, *tally, dunnage, lash, secure, unlash, discharge* and trim the cargo at their expense under the supervision

of the Captain who is to sign Bills of Lading for

79 cargo as presented, in conformity with Mate's or Tally Clerk's receipts *unless Charterers are making use of their authority to sign as per Clause 49.*

80      9.   That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers, or Engineers, the Owners shall on

81 receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the   appointments.

82      10. That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel *under his own risk and provided that prior to his boarding he has signed and delivered to vessel's Master/Owners relevant Letter of Indemnity* and see that voyages are prosecuted

83 with the utmost despatch. He is to be furnished with free accommodation, and same fare as provided for Captain's table, Charterers paying at the

84 rate of ~~$1.00~~ *USD10.00* per day.   Owners to victual Pilots and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally

85 Clerks, Stevedore's Foreman, etc., Charterers paying at the current rate per meal, for all such victualling. *See Clause 45*

86      11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, *in English* and the

87 Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-

88 terers, their Agents or Supercargo, when required, with a true copy of daily *deck and engine* Logs, *in English* showing the course of the vessel and distance run an d the

89 consumption of fuel.

3

90    12. That the Captain shall use diligence in caring for the ventilation of the cargo.

91    13. That the Charterers shall have the option of continuing   this charter for a further period of.................................................................................
92 .................................................................................................................................................................................

93    on giving written notice thereof to the Owners or their Agents.........days previous to the expiration    of the first named term, or any declared option.

94    14. That if required by Charterers, time not to commence before **0000 local time; 15ᵗʰ august 2006** but not later than 4 p.m. and should vessel

95    not have given written notice of delivery on or before 2400 local time, **20tʰ august 2006**   but not later than 4 p.m. Charterers or

96    their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness.

97    15. That in the event of the loss of time from deficiency *and/or default* of men or *deficiency of* stores, fire, breakdown or damages to hull, machinery or equipment,

98    grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause

99    preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost ; and if upon the voyage the speed be reduced by

100    defect in or breakdown of any part of her hull, machinery or equipment,   the time so lost,    and the cost of any extra fuel consumed in consequence

101    thereof, and all *proven and directly related* extra expenses shall be deducted from the hire.

102    16. That should the vessel be lost, money paid in advance and not earned ( reckoning from the date of loss or   being last heard of )   shall be

103    returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People,   and all dangers and accidents of the Seas,

104    Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted

105    The vessel shall have the liberty to sail with or without pilots, *and English law to apply* to tow and to be towed, to assist vessels in distress, and to deviate for the

106    purpose of saving life and property.

107    17. That should any dispute arise between Owners and the Charterers,   the matter in dispute shall be referred to three persons *in London* at New York,

108    one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for

108    the purpose of enforcing any award, this agreement may be made a rule off the Court.   The Arbitrators shall be commercial *shipping* men. *conversant with shipping matter and affairs. Any claim must be made in writing and claimant arbitrator appointed within 12 months of final discharge and where this provision is not complied with the claim/dispute, whether pertaining to Holiday or quantum or both shall be deemed to be extinguished and cease to exist.*

110    18. That the Owners shall have a lien upon all cargoes, and all sub-freights/*sub-hires* for any amounts due under this Charter, including General Average  .

111    age contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess

112    deposit to be returned at once.   Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which

113    might have priority over the title and interest of the owners in the vessel.

114    19.  That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after   deducting Owners' and Charterers'   expenses and

115    Crew's proportion. General Average shall be adjusted, stated and settled, according to Rules 1 to 15.   inclusive,   17 to 22, inclusive, and Rule F of

116    York-Antwerp Rules *1974, or any amendment, in London* 1924, at  such port or place in the United States as may be selected by the carrier, and as to matters not provided for by these

117    Rules, according to the laws and usages at the port of New York. In such adjustment disbursements in foreign currencies shall be exchanged into

118    United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at

119    the rate prevailing on the last day   of   discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or

120    bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier

4

121 ~~or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall,~~ if

122 ~~required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall,~~ at the option of the

123 ~~carrier, be payable in United States money and be remitted to the adjuster.~~ When so remitted the deposit shall be held in a special account at the

124 ~~place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in~~

125 ~~United States money.~~

126 ~~In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever,~~

127 ~~whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the~~

128 ~~goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,~~

129 ~~losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the~~

130 ~~goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or~~

131 ~~ships belonged to strangers.~~ *It is understood that the charter hire not to contribute to General Average.*

132   Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.

133   20. Fuel used by the vessel while off hire, ~~also for cooking, condensing water, or for grates and stoves~~ to be agreed to as to quantity,   and the

134 cost of replacing same, to be allowed by Owners.

135   21. ~~That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a~~

136 ~~convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from~~

137 ~~time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.~~

138 ......................................................................................................................................................................................

139 ......................................................................................................................................................................................

140   22. Owners shall maintain the gear of the ship as fitted, providing gear (for all derricks ) capable of handling lifts up to *as specified in Clause*

*31 and Owners to provide on the vessel sufficient light clusters as on board for night work at all hatches simultaneously free of charge to*

*Charterers and are to maintain same in efficient condition throughout this charter.* ~~three tons, also~~

141 ~~providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for~~

142 ~~same, otherwise equipment and gear for heavier lifts shall be for Charterers' account. Owners also to provide on the vessel lanterns and oil for~~

143 ~~night work, and vessel to give use of electric light when so fitted, but any additional lights over these on board to be at Charterers' expense.~~ The

144 Charterers to have the use of any gear on board the vessel.

145   23. Vessel to work night and day, *Sundays and holidays included,* if required by Charterers,and all *cranes*-winches to be at Charterers'

disposal during loading and discharging;

146 ~~steamer to provide one winchman per hatch to work winches day and night,~~ as required, ~~Charterers agreeing to pay officers, engineers,~~ winchmen,

147 ~~deck hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles. If the rules of the~~

148 ~~port, or labor unions, prevent crew from driving winches,~~ shore Winchmen to be paid by Charterers. In the event of a disabled winch or winches, or

149 insufficient power to operate *cranes* ~~winches,~~ Owners to pay for shore engine, or engines, in lieu thereof, if required, and pay any loss of time

occasioned

150 thereby. *but in such case vessel to remain fully on hire. All cranes to be at Charterers disposal at all times during loading and discharging*

*operations.*

151   24. It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability   contained

152 in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled " An Act relating to Navigation of Vessels',

153 etc., " in respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clauses both

154 of which are to be included in all bills of lading issued hereunder:

155                                    U.S.A. ~~Clause Paramount~~

156   ~~This bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April~~

5

157  16, 1936, which shall be deemed to be  incorporated herein,  and nothing herein contained shall be deemed a surrender by the carrier of

158  any of its rights or immunities or an  increase of any of  its  responsibilities or liabilities under said Act.  If any term of this bill of lading

159  be repugnant to said Act to any extent, such term shall be void to that extent, but no further.

160                                          Both to Blame Collision Clause

161  If the ship comes into  collision with another ship as a result of the  negligence of the other ship and any act, neglect or default of the

162  Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried

163  hereunder will indemnify the Carrier against all loss or liability to the other of non  carrying ship or her owners in so far as such loss

164  or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-

165  carrying ship or her owners to the owners of said goods and set off,  recouped or recovered by the other or non  carrying ship or her

166  owners as part of their claim against the carrying ship or carrier.

167    25. The vessel shall not be required to enter any ice - bound port, or any port where lights or light - ships have been or are about to be with-

168  drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the

169  port or to get out after having completed loading or discharging.

170    26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers.  The owners to remain responsible for the

171  navigation of the vessel, *act of pilots,* insurance, crew, and all other matters, same as when trading for their own account.

172    27. A commission of  2½ *1.25* per cent is payable by the Vessel and Owners to **Eastport Shipbrokers Pte Ltd(Singapore)**

173 ..............................................................................................................................................................................................................

174 on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.

175    28. An address commission of 2% per cent payable to......*Charterers*............................................on the hire earned and paid under this Charter.

*Clause 29 to 127, both inclusive, as attached are to be fully incorporated in this Charter Party.*

For  **CHARTERERS**                              For  **OWNERS**

6

## RIDER CLAUSES TO CHARTER PARTY DATED SINGAPORE, 12TH AUGUST, 2006
## PER M/V "FIVE STARS GLOBAL"/NASCO

29. Hire Payment Clause:

A) payable each 15 days hire in advance to owners nominated bank in us dollars. 1st hire to be paid and bod bunker of value w/l 3 banking days. After vessel's delivery, the balance hire if not over 2 days to be settled together with actual bunker consumption & liobe etc within 2 banking days after vessel's redelivery.

chtrs are entitled to deduct from last sufficient hire payments redelivery bunker value and owners to appoint their owners agent for owners matter at both loading and discharging ports. Charterers not to deduct estimated o/e from hire.

B) Where there is any failure to make "punctual and regular payment" due to oversight or negligence or error or omission of Charterers' employees, bankers of Agents or otherwise for any reason where is absence of intention to fail to make payment as set out, Charterers' shall be given by Owners 3 (three) banking days written notice to rectify the failure and where so rectified the payment shall stand as "punctual and regular payment". if there is a failure of the bank, Charterers to have 3 banking days grace to rectify the failure.

C) In the event that the vessel is expected to be redelivered to the Owners prior to the expiry of the last 15 days period that would be covered by the next payment of hire, Charterers shall be entitled to effect payment of hire on the basis of the estimated time necessary to complete the service.

D) Cash money drawn by the Master shall be taken at the office of the port Agents or shall be drawn by the Master from the bank.  In the event that the Master requests delivery of cash money at the vessel, all risks and expenses involved in arranging and making such delivery of cash money to the vessel shall be borne by the Owners.

E) Notwithstanding anything contained herein to the contrary, it is understood that if at any time during the currency of this Charter the hire payment shall become due on a Saturday, Sunday or Holiday or outside normal banking hours, payment of hire may be made on the next banking day immediately following the date on which hire became due and such payment shall stand as "punctual and regular payment".

F) Charterers have the right to withhold from Charter hire during the period of this Charter such reasonable amounts due them for undisputed off-hire time, but proper supporting statements are to be sent to Owners as soon as possible and original invoice.

G) Bank for hire payment:
NAME OF BENEFICIARY:    FIVE STARS GLOBAL SHIPPING (GROUP) COMPANY
BENEFICIARY'S BANK:     BANK OF COMMUNICATIONS HONGKONG BRANCH
SWIFT CODE:             COMMHKHH
ACCOUNT NO. OF BENEFICIARY: 02753293033083

30. Bunkers on delivery as on board about 350 metric ton of IFO and about 50 metric ton of MGO.
Bunkers on redelivery to be same quantity as of bunkers on delivery..
Bunker price to be USD380 per metric ton for IFO & usd680 per metric ton for MGO.

31. Description of vessel:

1. HEAD OWNERS: FULL STYLE/TEL/FAX/TLX/PIC
        HONGKONG HONGSHENG SHIPPING CO.,LTD
        TEL:86-591-87240377
        FAX:86-591-87845688
        PIC:DREAM SHEN

2. MANAGERS: FULL STYLE/TEL/FAX/TLX/PIC
        MANAGER:ZHANG MEIFANG
        TEL.: 86-591-87240377-802
        FAX: 591-87845688
        MOB:13509399797

1

## RIDER CLAUSES TO CHARTER PARTY DATED SINGAPORE, 12TH AUGUST, 2006
## PER M/V "FIVE STARS GLOBAL"/NASCO

MV. FIVE STAR GLOBAL -

| | |
|---|---|
| (D)NAME OF SHIP | : MV 'FIVE STARS GLOBAL' |
| -OWNRS | : HONGKONG HONGSHENG SHIPPING LTD |
| -PORT OF REGISTER | : PANAMA FLAG |
| -CLASS | : HDRS |
| -IMO NO | : 7404607 |
| -CALL SIGN | : 3FZX6 |
| -MMSI | : 353224000 |
| -INMARSAT-C NO: | : 435322410/20 |
| -GRT/NRT: | : 23,705/14,611 MT |
| -DWT | : (S) 40754MT  (W)39639MT (T)41874MT |
| -DRAFT: | : 12.11M |
| -LENGTH OVERALL : | : 183.675M |
| -BREADTH : | : 27.60M |
| -DRPTH (MOLD) | : 17.00M |
| -BUILT AT: | : MIZUSHIMA,JAPAN |
| -DELIVERED : | : 1977 |
| -F.WATER CAPA: | : 341.4MT |
| -FUEL OIL TOTAL: | : 2322.9 CBM/2141.70KT |
| -CARGO GEAR : | : 5×25METRIC   (PROVIDE  15T ) |
| BALAST/LADEN DAILY CONSUMPTION | : 26/27  180 CST |
| BALAST/LADEN DAILY CONSUMPTION | : 2.0/2.5  MGO ( HAVE CRANE +0.5) |
| CONSUMPTION IN PORT ABT | : 2.0MT MGO + ABT 1MT IFO MAX180CST |
| CONSUMPTION FOR IN/OUT EACH PORT PLUS | : 3MT  MGO |
| SPEED | : ABT 12KN |
| T . P . C . | : 44 MT AT SUMMER DRAFT |

-HATCH COVER: NO.1 SINGLE PULL TYPE   NO.2-5 SINGLE SKINPONTOON TYP
-HOLD VENTILATION : NATURAL VENTILATION WITH MUSHROOM TYPE
-GRAIN/BALE CAPACITY:        47,711.10 CBM/45,319.30 CBM
-HATCH SIZE ASF:

| | G/B | L | B |
|---|---|---|---|
| NO.1 | 6976.90/6642.60 | 12.6 | 11.0 |
| NO.2 | 10255.00/9700.40 | 21.1 | 11.0 |
| NO.3 | 10298.80/9747.70 | 21.6 | 11.0 |
| NO.4 | 10298.80/9747.70 | 21.6 | 11.0 |
| NO.5 | 9887.60/9480.90 | 21.6 | 11.0 |

ALL DETS ABT WOG

Type of the vessel: BULK
Built: JAPAN
Year: 1977
Yard: MIZUSHIMA,JAPAN
Remarks:
Ex name: MV. BETA
Current name: Five Stars Global
Flag: Panama
Class: HDRS
Register number: 23840-97-C
International GRT/NRT: 23705/14611MT
Panama/Suez GRT/NRT:
LOA: 183.675M
Breadth: 27.60M
Depth Moulded: 17.00M

(1).MAIN ENGINE TYPE: SUMITOMO SULZER 7RND 76
(2).SUMMER SW DWT/40754MT. DRAFT/12.112M,TPC/44.268
FRESH SW DWT/40757MT,DRAFT/12.390M,TPC/44.45

## RIDER CLAUSES TO CHARTER PARTY DATED SINGAPORE, 12TH AUGUST, 2006
## PER M/V "FIVE STARS GLOBAL"/NASCO

(3).TANK CAPA: FO/2322.9CBM,DO/141.8CBM,FW/341.4CBM
BW/14327.3CBM,SEWAGE/17.2CBM.
(4).CONSTANTS:390MT,UN PUMP OUT BALLAST:400MT,
UN PUMP OUT FO/50MT,UN PUMP OUT DO/15MT.
(5).HATCH DIMENSIONS: H1/20.63(L)X27.6M(B),H2/27.9X27.6,
H3/4/28.0X27.6,H5/27.2X27.6.
(6).H.COVER TYPE: NO.1 SINGLE PULL TYPE.NO.2-5 SINGLE SKIN PONTOON TYPE.
(7).5 DERRICKS. ONE DERRICK FOR ONE HATCH,SWL/15.0MT. OUT
REACH:NO.1/6.14M,NO.2-5/8.0M.LOWING SPD: 162M/MIN. (8).CGO FEATURE: CGO IN BULK/LOG. GRAIN
CAPA:47717.1CBM BALE CAPA./45319.3CBM.
(9).TANK TOP DIM.: H1/20.63(L)X19.2M(B).H2/27.9X19.2,H3/4/28.0X19.2,H5/27.2X27.6
(10).STRENGTH: TANK TOP:H1/21.27MT/M2,H2/16.4,H3/21.35,
H4/16.4,H5/21.33. WEATHER DECK: H1/2.70. H2-5/3.85.
(11).CO2 SYSTEM FITTED
(12).NATURAL VENTILATION.
(13).HOLD SPACE WIZOUT OBSTACLES. PERMANENT AND
COLLAPSIBLE STANCHION ON DECK FITTING FOR LASHING
OF TIMBER CARGO.
(14).STEEL FLOORED TANKTOPS
(15).ALTERNATE HOLDS LOADING:H1/H3/H5.

Call Sign: 3FZX
Telephone: 00871-764465999
Fax: 00871-764466010
Telex
Email: 5_stars_global@skyfile.com
Speed & consumption description:

| | |
|---|---|
| BALLAST/LADEN DAILY CONSUMPTION | 26/27   180 CST |
| BALLAST/LADEN DAILY CONSUMPTION | 2.0/2.5   MGO ( HAVE CRANE ÷0.5) |
| CONSUMPTION IN PORT ABT | 2.0MT MGO ÷ ABT 1MT IFO MAX 180CST |
| CONSUMPTION FOR IN/OUT EACH PORT PLUS | 3MT   MGO |

MASTER NAME/ MASTER/ALL CREW NATIONALITY:
MASTER NAME: WANG FENG.
ALL CREW NATIONALITY ARE CHINA.

LAST THREE CARGOES AND CHARTERERS:
1.COAL    DAEYANG(HK)SHIPPING CO.,LTD
2.COAL    GNS CO.,LTD
3.COAL    HANSE CO.,LTD

32. Deleted.

33. Charterers to have benefits of any return insurance premium receivable by Owners from their Underwriters, as and when received from Underwriters, by reason of the vessel being in port for a minimum period of 30 days, if on full hire for this period and pro-rata for the time actually on-hire.

34. On and off hire surveys shall be held jointly between Charterers and Owners by one single surveyor to be mutually agreed. On hire survey to be appointed by Charterers with Owners' prior approval. On-hire survey to be held at first loading port in Owners' time subject to actual delay to Charterers operation and off-hire survey to be held in Charterers' time at last discharge port before redelivery.
Expenses for on/off-hire survey to be equally shared between Owners and Charterers.

35. Both parties to have the option of cancelling this Charter Party with reasonable notice if War breaks out between any two or more of the following countries to such an extent as to render the continuation of the Charter Party impossible and provided that vessel is cargo free : U.S.A., U.S.S.R., Great Britain, Japan, the People's Republic of China, France, Republic of Korea, North Korea, and any Arabia countries.

36. Should the vessel put back whilst on voyage by reason of an accident or breakdown or deviation upon the course of the voyage caused by sickness of or any accidents to the crew or any person on board the vessel other than persons travelling at the request of the Charterers, or by reason of the refusal of the Captain or crew to perform their duties, the hire shall be suspended from the time of putting back until she be again in the same position or equidistant position and resumes the voyage.

Bunkers consumed during the period shall be for Owners' account.

Especially the following events to be deemed as off-hire until the vessel be again in the same or equivalent position and resumed the voyage :

A) In the event of deviation from loading invalid crew and/or stowaway and from salvage.

B)   In the event of loss of time strike of the crew.

C)   In the event of deviation by alleged oil pollution.

37. Charterers shall not in any event be liable for claims in connection with stevedore damages suffered by the vessel and/or equipment unless :

A) Master advises Charterers or their Agents in writing or by cable within 24 hours of occurrence of any damage for which Master considers Charterers liable so that Charterers may claim against stevedores, or parties responsible. In case of hidden damage, same to be reported as soon as discovered.

B) Such damages shall have been entered in vessel's logbooks and

C) Master shall also have held stevedores or parties responsible for damage liable in writing or by cable/telex with copy to Charterers that any case, Charterers to remain ultimate responsible.

If extent of damage cannot be ascertained on occurrence, Owners/Master must report occurrence of damage in accordance with (A), (B), and (C) as above and details may follow when examination possible. If at time of redelivery there remains outstanding damage for which Charterers may be liable but which, without affecting the seaworthiness and/or cargoworthiness and/or trading capabilities of the vessel, which should be conflicted by class society, can be repaired by Owners at any convenient time after redelivery, Owners shall accept redelivery of the vessel provided that Charterers undertake to reimburse the costs of repairing on the basis of actual repair bills of mutual agreement and time used for repairs not to count as hire..

Damages affecting vessel's seaworthiness/class/cargoworthiness to be repaired immediately at the port of occurrence at Charterers' time/risk and expense to vessel's class satisfaction and vessel to remain on full hire during that time.

38. Vessel to be delivered with valid deratisation certificate or deratisation exemption certificate on board and if this does not cover the whole period of time-charter Owners to undertake to carry out all necessary steps to renew such certificate and costs of same and detention to be for Owners' account.

39. Owners and Master to undertake best efforts to co-operate with Charterers for best stowage of cargo.   Owners and Master also undertake to co-operate with Charterers in taking necessary steps for cargo fumigation, if necessary, subject to receiving clear and proper instructions from Charterers to this respect at Charterers' time and expenses and responsibility.

40. Vessel to passes the necessary certificate to comply with safety and health regulations and current requirements at all ports of call.

41. Deleted

42. Charterers to have the option to arrange a superficial inspection at any time, Owners or Master giving every facility to carry it out.

43. Deleted.

44. Deleted

### RIDER CLAUSES TO CHARTER PARTY DATED SINGAPORE, 12TH AUGUST, 2006
### PER M/V "FIVE STARS GLOBAL"/NASCO

45. Owners guarantee vessel's holds on delivery to be clean swept/washed down by fresh water and dried up so as to receive Charterers' intending cargoes in all respects, free of salt and rust scale and previous cargo residue to the satisfaction of the on-hire surveyors.

If vessel failed to pass hold inspection as above, the vessel should be placed off-hire from the time of rejection until the vessel passes the same inspections again and any expenses incurred thereby to be for owrs's acct.

Charterers to have the option to redeliver the vessel without cleaning holds including removal/disposal of all dunnage/lashing material/debris if any, against Charterers paying USD3,500 in lumpsum to Owners.

Intermediate hold cleaning : The Charterers shall provide and pay directly to Owners extra for sweeping and/or washing and/or cleaning of holds between voyages and/or between cargoes provided such work can be undertaken by the crew and is permitted by local regulations at the rate of USD2,000 lumpsum.
Vessel to be always put off-hire if vessel fails any hold inspection during the current of this Charter Party.
Cable/entertainment/victualling etc., USD1,200 per month or pro-rata.
Cable/entertainment/victualling expenses to be settled with Owners.

46. Owners to advise Charterers full name of Master when fixture is confirmed and Owners to give advance notice to Charterers with full name of new Master when Owners decide to change Master.

47. Charterers to undertake to keep Owners and Master informed during the period as of regards the itinerary of the vessel and the name of their Agents at ports of call.

48. Charterers' agent to attend vessel's minor usual services free of charge but all expenses incurred to be for Owners' account.

49. Owners to allow a/o Charterers or their agents to sign/release original Bill(s) of Lading on behalf of master in accordance with mates receipts.

50. Owners/Master to give notice to Nanjing Ocean Shipping., Co., Ltd. expected time of delivery and expected quantities of IFO and MDO remaining on board at time of delivery, upon fixing and updated expected delivery date as applicable prior to date of delivery.

51. Owners' P & I Club is MARITIME MUTUAL INSURANCE ASSOCIATION
Charterers have the benefit of Owners' P and I Club so far as the rules permit.

52. Throughout the period of this Charter vessel will have on board current valid and up-to-date certificate and will so comply with all applicable requirements, regulations and recommendations.

Any delay caused by non-compliance with the aforesaid or lack of proper documentation and/or certificates required will be considered off-hire and all expenses resulting from such delay, including bunkers consumed during the period, will be for Owners' account.

53. If the vessel is off-hire for a consecutive period of 30 days, Charterers have the right to cancel this Charter Party without any further obligation under this contract on the party of Charterers, provided no cargo remaining on board.

54. Any taxes/dues/expenses due to vessel's registry Ownership/crew/flag/absence of certificate to be for Owners' account. Any and all other taxes, due commissions and or wharfages to be for Charterers' account.

55. In the event of breakdown of crane(s) by reason of disablement of insufficient power, the hire to be reduced pro-rata for the period of such an insufficiency in proportion to the number of working hatches at the time of breakdown of equipment.

If Charterers select to continue work on hatch or hatches affected by vsl's gear breakdown by hiring shore appliances, Owners are to pay for the shore appliances. Hiring and cost of shore crane hire is to
be reasonably approved by owrs within 1 hr. in such case Charterers are to pay full hire for all time that the shore appliances are working.'
Any stevedoring and/or labour charges additionally occurring due to breakdown of vessel's equipment shall be for owners' account, unless the cause of breakdown of cranes in attributed to stevedoring damage in which case vessel will remain on full hire, including costs for standby of stevedore, labour to be for Owners' account.

## RIDER CLAUSES TO CHARTER PARTY DATED SINGAPORE, 12TH AUGUST, 2006
## PER M/V "FIVE STARS GLOBAL"/NASCO

Owners to agree for the cost of hiring of shore appliances which not to be unreasonably withheld.

56. From the date of coming into force of the International Safety Management (ISM) Code in relation to the vessel and thereafter during the currency of this Charter Party, the Owners shall procure that the vessel and "the company" (as defined by the ISM Code) shall comply with the requirements of the ISM Code. Upon request the Owners shall provide a copy of relevant document of compliance (DOC) and Safety Management Certificate (SMC) to the Charterers. Except as otherwise provided in this Charter Party, loss, damage, expense or delay caused by failure on the part of "the company" to comply with the ISM Code shall be for Owners' account.

57. Deleted

58. Deleted

59. Cargo claims between the Owners and Charterers shall be settled in accordance with the Interclub New York Produce Exchange Agreement in February 1970, as amended 1996.
NO party is authorized to proceed with the settlement of any cargo claims or grant time extensions unless the other party's written approval has been obtained. Neither party shall between themselves refer to the one year time limit as a defence.

60. Deleted.

61. Any delay, expenses and/or fines incurred on account of smuggling if caused by Master, Officers and/or crew to be for Owners' account and if caused by Charterers' servants or representatives to be for Charterers' account.

62. Deleted.

63. Charterers and supercargoes to have the right of using the vessel's means of communication.
(See Clause 10)

64. Deleted.

65. Owners to supply fresh water at their account during this Charter except the same used for Charterers' business, which to be for Charterers' account.

66. Vessel uses Diesel Oil in main engine when entering/leaving port and when maneuvering in narrow/ shallow/ restricted water.

67. Owners guarantee that vessel's hatchcover are to be watertight all throughout this Charter period and if any hatchcovers found defective, same to be rectified at Owners' time and expenses to Charterers satisfaction. Charterers also have the right to carry out hose test on all hatches at any time during this Charter period.

68. Cargo gear to be in fully efficient state throughout the currency of the Charter Party.

69. Owners warrant that the vessel's holds are clear of any superstructures such as car deck/curtain plates whatsoever.

70. Should the vessel be arrested during the currency of this Charter at the suit of any person having or purporting to have a claim against or any interest in the vessel, the hire is to be suspended for any period that the vessel remains under arrest, unless still available for use by Charterers, or remains unemployed as the result of such arrest and Owners shall reimburse to Charterers any proven expenditure and consecutive loss incurred due to the arrest.

71. Owners to allow Charterers to discharge and release entire cargo without presentation of original Bill(s) of Lading by providing Charterers Letter of Indemnity in accordance with Owners P and I Club form and wording before discharging Letter of Indemnity to be signed by Charterers only.

72. Normal quarantine time and expenses for vessel entering port(s) to be for Charterers' account, but any time of detention and expenses for quarantine due to pestilence, illness etc., of Master/Officers/crew to be for Owners' account unless it is because of the cargo carried or the ports visited whilst under present charter in which case to be for Charterers' account.

73. Watchmen charges, if any, shall be borne, by party arranged/orders the same.

## RIDER CLAUSES TO CHARTER PARTY DATED SINGAPORE, 12TH AUGUST, 2006
## PER M/V "FIVE STARS GLOBAL"/NASCO

74. Vessel's cargo gear and all other equipment shall comply with the regulations of the country in which vessel, will be employed and Owners to ensure that the vessel is at all times in possession of valid and up-to-date certificates of efficiency to employ with such regulations. Gear certificates to be shown to Charterers or their Agents if required.

If stevedore, longshoremen or other workmen are not permitted to work due to failure of Master and/or Owners and/or Owners' Agents to comply with the aforementioned regulation or because vessel is not in possession of such valid and up-to-date certificates of efficiency, then Charterers may suspended hire for the time thereby lost.

75. Owners guarantee that vessel is not blacklisted by any Arab league countries nor US/Canadian Longshoremen's Union.

76. All negotiation and eventual fixture to be kept private and confidential.

77. Deleted.

78. Deleted.

79. Deleted

80. Greenwich Mean Time to be applicable for charter hire calculation, local time to be applicable for vessel's delivery/redelivery.

81. Additional premium on cargo insurance due to vessel's age and flag to be for Charterers' account.

83. Deleted.

84. Deleted.

85. Charterers to use lashing/dunnage materials free of expenses as on board which if not available then same will be supplied by the Charterers.

86. Deleted.

87. Deleted.

88. Deleted.

89. Owners/Master to give Charterers 10/7/5/3/2/1 day prior notice of vessel's expected delivery.

90. New Both to Blame Collision Clause, New Jason Clause, U.S.A. Clause Paramount. Chamber of Shipping Nuclear Clause and Chamber of Shipping Clause Paramount as per attached shall be incorporated in this Charter Party, New Both to Blame Collision clause, New Jason Clause, Clause Paramount shall be included in all Bill(s) of Lading issued under this Charter Party.

91. Deleted.

92. Owners to have liberty to bunker for Owners account in Charterers time provided this does not interfere with Charterers business and to notify Charterers of their intention at least 72 hours prior to such bunkering taking place or as mutually agreed.

93. Deleted.

94. Good weather condition mentioned in lines 9/10 of the preamble applies to Beaufort scale 4 and Douglas state of sea 3. The about before the speed gives the vessel and allowance for half a knot.

95. Charterers/Receivers have option to place mobile cranes on deck at discharging port but depending on vessel's deck strength. If deck strength is not strong enough Receivers to put enough dunnage to Master's satisfaction with wooden batterns for spreading the weight of mobile cranes, grabs and cargo to deck area.

## RIDER CLAUSES TO CHARTER PARTY DATED SINGAPORE, 12TH AUGUST, 2006
## PER M/V "FIVE STARS GLOBAL"/NASCO

Any damage caused to vessel by mobile cranes and any modification requested in this respect will be effected and repaired/restored by Charterers in their time and at their expenses to the satisfaction of the vessel's class surveyor and the Master.

96. Owners to warrant vessel is a single deck general cargo and can load a full and complete cargo in cargo hold according to the latest SOLAS Regulations.

97. Owners warrant that the vessel has not traded with Cuba during the last 24 months and has never called North Korea.

98. Charterers may supply an independent weather routing company's advises to Master during the voyages specified by Charterers. Master shall comply with the routing procedure of the routing services selected by Charterers but always subject to Master's description for the safety of the vessel and the weather routing service shall be taken as ruling
99. Deleted.

100. Owners guarantee vessel is suitable for grab discharging as far as a vessel of her size/type can be and bulldozer operation in holds provided the weight of grabs/bulldozers is compatible to vessel's tank top strength.

101. Deleted.

102. Vessel has not relation to Ex-Yugoslavia in vessel's flag/ownership/crew etc.

103. Deleted.

104. Owners confirm that Master can speak English well not affecting Charterers smooth operation and if there some communication problem happened due to Master non ability in speaking English Owners should change Master immediately upon Charterers request.

105. No dry dock during whole this Charter Party except emergency and / or required by vessel's class and Owners confirm the ship will not be sold during current Charter Party period. Charterers have the option of adding any time the vessel is off-hire to the Charter Period.

106. In the event that steel cargo be loaded under this Charter Party, the Owners have the option to appoint a surveyor through their P and I Club to carry out a pre-loading condition survey on the cargo and expenses shall be for Owners account. Charterers are to give Owners not less then 72 hours notice, Saturdays and Sundays excluded, of the intention to load steel cargo.

107. Owners guarantee that valid ITF agreement for the vessel covering any port or place is available on board for the whole period of this Charter Party.

108. Deleted.

109. Basic annual War risk insure premium for world wide trading to be for Owners' account. Additional War risk insurance premiums imposed by the Owners underwriters due to the trading of the vessel to or through areas for which extra and/or additional premium applies same to be for Charterers' account but not to exceeding LLOYDS of London underwriters. Same will be paid by Owners and reimbursed to Owners by Charterers against presentation of vouchers.

110. Deleted

111. The term and condition of this Charter Party are subject to the Hague Rules contained in the International Convention for the verification of certain rules relative to Bill(s) of Lading dated Brussels 25-8-1924 and any subsequent amendments thereto.
General Paramount clause to be incorporated in all Bill(s) of Lading issued under this Charter Party.

112. Bimco canceling clause with Charterers declaration within 24 hrs to be applied.

113. Charterers intended cargo to be steel pipe, unit weight to be 4-6 metric tons.

114. Charterers must advise owners of the discharging port within one working day after completion of loading..

8

### RIDER CLAUSES TO CHARTER PARTY DATED SINGAPORE, 12TH AUGUST, 2006
### PER M/V "FIVE STARS GLOBAL"/NASCO

115.Charterers to settle directly with the last Charterers about Chinese tonnage due certificate.

--------------------------------------------------------------------------------
BELOW ADDITIONAL CLAUSES TO BE FULLY INCORPORATED INTO THIS CHARTER PARTY:

116.P&I CLUB: OWNERS GUARANTEE THAT VESSEL'S PAND I CLUB IS A FULL MEMBER OF THE
INTERNATIONAL GROUP OF P&I CLUBS ASSOCIATION (INCL WRECK REMOVAL CLAUSE) AND WILL
REMAIN SO THROUGHOUT THE DURATION OF THIS CP.
NAME OF THE P&I CLUB: MARITIME MUTUAL INSURANCE
ASSOCIATION
CLASS: OWNERS GUARANTEE THAT VSL IS CLASSED LLOYDS 100A1 LMC OR
EQUIVALENT AND WILL REMAIN SO THROUGHOUT THE DURATION OF THIS CP.

117.THE BIMCO STANDARD ISM CLAUSE TO BE USED

118. OWNERS AGREE WITH BIMCO Y2K CLAUSE

119. OWNERS GUARANTEE VESSEL WILL NOT TO BE SOLD/SCRAPED DRYDOCK DURING THIS C/P
TIME.

120. OWNERS GUARANTEE VESSELS'S NOT BLACK LISTED BY C/P TRADING COUNTRIES DUE TO
VESSEL'S FLAG/OWNERSHIP/OPERATORS/AGE WHATSOEVER AND WITH AHL/WWF/ITF IN
ORDER.

121. OWNERS GUARANTEE THAT VESSEL'S HATCHCOVERS ARE TO BE WATERTIGHT ALL
THROUGHOUT THIS CHARTER PERIOD N IF ANY HATCH.COVER FOUND DEFECTIVE, SAME TO BE
RECTIFIED AT OWNERS' TIME AND EXPENSES TO INDEPENDENT SURVEYOR'S SATISFACTION.

122. OWNERS GUARANTEE VESSEL'S HOLDS ON DELIVERY TO BE CLEAN SWEPT AND WASHED
DOWN AND DRIED UP SO AS TO RECEIVE CHARTERERS INTENDED CGOS IN ALL RESPECTS, FREE OF
SALT, LOOSE RUST SCALE AND PREVIOUS CGO RESIDUE TO SURVEYOR'S SATISFACTION.
IF THE VESSEL FAILS TO PASS ANY HOLD INSPECTION, THE WHOLE VSL SHOULD BE PLACED
OFF-HIRE FROM THE TIME OF REJECTION UNTIL THE VESSEL PASSES THE SAME INSPECTION AGAIN
AND ANY EXPENSES INCURRED THEREBY TO BE FOR OWNERS' ACCOUNT.

123. OWNERS GUARANTEE VESSEL'S CARGO GEAR AND ALL OTHER EQUIPMENT SHALL COMPLY
WITH THE LAW AND REGULATINS OF THE PORTS/COUNTRIES IN WHICH THE VESSEL WILL BE
EMPLOYED. IF STEVEDORES, LONGSHOREMEN OR OTHERWORKMEN REFUSE OR ARE NOT
PERMITTED TO WORK DUE TO FAILURE OF THE VESSEL TO COMPLY WITH THE SAID LAW AND
REGULATIONS, ALL LOSS OR DAMAGE (INCLUDING DELAY) RESULTING THEREFROM SHALL BE FOR
OWNERS ACCOUNT.

124. OWNERS GUARANTEE VESSEL'S CRANES/DERRICKS/GEARS(INCLUDING GRABERS IF ANY) ALL
IN GOOD WORKING CONDITION AND SUITABLE FOR LOADING/DISCHARGING CHARTERERS
INTENTION CGO DURING THIS CP, IN CASE ANY BREAKDOWN OF THE CRANES/DERRICKS/
GEARS(INCLUDING GRABBERS IF ANY),THE VSL WILL BE PUT OFF HIRE ON PRORATA BASIS.
HOWEVER IF CHARTERERS OPTION TO HIRE SHORE CRANES THEN THE WHOLE VESSEL WILL BE
PLACED ON HIRE.
SHOULD THE FINAL COMPLETION OF THE LOAD/DISCHARGE BE DELAYED WHEN CARGO IS TO BE
COMPLETED AND PROVIDED CGO IS ONLY REMAINING IN THOSE HOLDS DUE TO BREAKDOWN OF
THOSE CRANES, THEN THE ENTIRE VESSEL TO BE OFF-HIRED. ALL EXPENSES DUE TO VESSEL'S
CRANE/DERRICKS/GEARS BREAKDOWN/INSUFFICIENT POWER ETC, TO BE FOR OWNERS ACCT.

125. OWNERS GUARANTEE THAT VESSEL'S HOLDS ARE TB CLEAR OF ANY FITTING/SUPER
STRUCTURES SUCH AS CARDECK, CURTAIN PLATES, CNTR FITTING WHATSOEVER, AND IT IS
SUITABLE IN EVERY RESPECTS FOR CHRS TO LOAD INTENTION CARGO AND VESSEL IS SUITABLE
FOR GRAB/BULLDOZER DISCHARGE AND DISCHARGE AT ANCHORAGE.

### RIDER CLAUSES TO CHARTER PARTY DATED SINGAPORE, 12TH AUGUST, 2006
### PER M/V "FIVE STARS GLOBAL"/NASCO

126. OWNERS ALLOW CHARTERERS TO DISCHARGE CARGO W/O PRESENTATION OF ORIGINAL BS/L AGAINST CHARTERERS SINGLE LOI IN OWNERS P&I CLUB WORDING WITH CHARTERERS ENDORSEMENT ONLY.

127. OWNERS ALLOW CHARTERERS A/O THEIR AGENT TO SIGN/RELEASE BS/L ON BEHALF OF MASTER IN ACCORDANCE WITH MATES RECEIPTS.

/// E N D ///

## RIDER CLAUSES TO CHARTER PARTY DATED SINGAPORE, 12TH AUGUST, 2006
## PER M/V "FIVE STARS GLOBAL"/NASCO

### U.S.A. CLAUSE PARAMOUNT

This Bill of Lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved 16 April, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this Bill of Lading be repugnant to said Act to any extent, such term shall be void to that extent, but not further.

### CHAMBER OF SHIPPING NUCLEAR CLAUSE

Notwithstanding any other provision contained in this Charter it is agreed that nuclear fuel or radioactive products or waste are specifically excluded from the cargo permitted to be loaded or carried under this Charter Party.

This exclusion does not apply to radio-isotopes used or intended to be used for any industrial, commercial, agricultural, medical or scientific purpose, provided Owners' prior approval has been obtained to the loading thereof.

### CHAMBER OF SHIPPING CLAUSE PARAMOUNT

Notwithstanding anything herein contained no absolute warranty of seaworthiness is given or shall be implied in this Charter-Party and it is expressly agreed that the Owners shall have the benefit of the "Rights and immunities" in favor of the carrier or ship and shall assume the "Responsibilities and Liabilities" contained in the enactment in the country of shipment giving effect to the rules set out in the international Convention for the unification of certain rules relating to Bills of Lading : dated Brussels the 25th August, 1924 (the "Hague Rules"). If no such enactment is in force in the country of shipment the Terms of Articles III & IV shall apply.

Notwithstanding the provisions of any such claim shall be limited to Stg. 200 Lawful money of the United Kingdom per package or unit of cargo (unless the nature and value of such cargo have been declared by the Shipper before loading and inserted in the Bills of Lading) notwithstanding that some other monetary limit is laid down by the legislation to which the contract of carriage is subject.

If any provision of this Charter Party shall be repugnant to the said rules to any extent, such provisions shall be void to that extent, but no further. Any Bill of Lading issued pursuant to this Charter Party shall contain a Clause Paramount incorporating the Hague Rules whether they are compulsorily applicable or not.

### NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever whether due to negligence or not, for which or for the consequence of which, the carrier is not responsible by statute, contract or otherwise, the goods, shippers, consignees or Owners of the goods shall contribute with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.

If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully as if the such salving ship or ships belonged to strangers. Such deposit as the carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, shippers consignees or Owners of the goods to the carrier before delivery.

11

## RIDER CLAUSES TO CHARTER PARTY DATED SINGAPORE, 12TH AUGUST, 2006
### PER M/V "FIVE STARS GLOBAL"/NASCO

### NEW BOTH TO BLAME COLLISION CLAUSE

If the liability for any collision in which the vessel is involved while performing this Charter Party falls to be determined in accordance with the laws of the United States of America, the following clause shall apply :

"if the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, Mariner, Pilot or the servants of the carrier in the navigation or in the management of the ship, the Owners of the goods carried hereunder will indemnify the carrier against all loss or liability to the other or non carrying ship or her Owners in so far as such loss or liability represents loss of or damage to, or any claim whatsoever of the Owners of the said goods, paid or payable by the other or non corroding ship or her Owners to the Owners of the said goods and set off, recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying ship or carrier."

"The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect of a collision or contact".

**EXHIBIT 2**

200066

FIVE STARS GLOBAL SHIPPING (B.V.I) CO., LTD.
TEL:86-591-87841158    FAX:86-55-187845688
ADD:4TH, ETRADE BLDG, NO. 298 GUDONG ROAD GUZHOU FUJIAN CHINA

## STATEMENT OF ACCOUNT

CHARTERER: FORMULA SHIPPING CO., LTD                    DATE:   DEC 3RD, 2007

OWNER:   FIVE STARS GLOBAL SHIPPING (B.V.I) CO., LTD

VESSEL:   MV FIVE STARS GLOBAL

| HIRE | Prefinal | TIME (GMT) | FROM OCT 9TH 07:40, 2007 TO DEC 8TH 07:40, 2007 | DAYS | 60 |
|---|---|---|---|---|---|
| TOTAL | CR23: (USD) | | DEBIT (USD) | | BALANCE DUE TO OWNER (USD) |
| | 2,509,146.16 | | 1,935,725.00 | | 573,421.16 |

| ITEM | | CREDIT (USD) | DEBIT (USD) |
|---|---|---|---|
| HIRE: USD35000*60 | | 2,100,000.00 | |
| ADDCOMM: USD35000*60*2.5% | | | 52,500.00 |
| C/E/V: USD1200/MONTH | | 2,367.12 | |
| BOD:IFO 491.304MT*USD400/MT | | 196,521.60 | |
| BOD:MGO 188.408MT*USD680/MT | | 128,757.44 | |
| CHRTR PAID 1ST HIRE:USD865,377.78 | | | 865,377.78 |
| CHRTR PAID 2ND HIRE:USD481,183.33 | | | 481,183.33 |
| BONUS ONDECK CARGO:USD80000.00 | | 80,000.00 | |
| ROB:IFO 453.000MT*USD400/MT | | | 181,200.00 |
| ROB:MGO 125.000MT*USD680/MT | | | 85,000.00 |
| CHRTR PAID 3RD HIRE:USD270,463.89 | | | 270,463.89 |
| ILOHC: USD3500 | | 3,500.00 | |
| | | | |
| | | | |
| S. TOTAL (USD) | | 2,509,146.16 | 1,935,725.00 |

REMARK:  ROB AS PER MASTER DAILY REPORT ON DUE DAY DECEMBER 3RD, 2007.

P/S:REMIT THE AMOUNT ABOVE TO OUR BANK ACCOUNT.
NAME OF BENEFICIARY:   FIVE STAR ETERNAL SHIPPING CO., LTD
BENEFICIARY BANK:  CHINA BANKING CORPORATION LIMITED
SWIFT CODE: CYGHKHH
ACCOUNT NO. OF BENEFICIARY: 039-730-5-207378-2



EXHIBIT 3

上海浦东发展银行离岸账户 2007年07月02日交易    账务发生查询
2007/07/02 Shanghai Pudong Development Bank Offshore Account Dr/Cr Enries

客 户 代 码: 88001188    发展有限公司
Customer ID: 88001188    EVER SHINE LIMITED

账  号: 08012XXXXYXXX8034
A/C No: 08012XXXXYXXX8034
币  种: 美元
Currency: USD

| 业务编号 | 起息日 | 借方金额 | 贷方金额 | 摘要 |
|---|---|---|---|---|
| Ref. no | Value date | Debit amount | Credit amount | Notes |

FAC5A1G8088281 20070702         360,159.00         汇出汇款
收款人: CN88850808063 FIVE STARS GLOBAL SHIPPING GROUP COMPANY

上海浦东发展银行离岸运营中心
Offshore Banking Operations O & T
Shanghai Pudong Development Bank

第 1 页